JOHN W. BREED vs. AMOS G. JUDD & another.

An infant, in consideration of an outfit to enable him to go to California, agreed, with the assent of his father, to give the party furnishing the outfit one third of all the avails of his labor during his absence, which he afterwards sent accordingly. The jury having found that the agreement was fairly made, and for a reasonable consideration, and beneficial to the infant, it was held, that he could not rescind the agreement and recover back the amount so sent, deducting the amount of the outfit and any other money expended for him by the other party in pursuance of the agreement.

ACTION OF CONTRACT to recover the sum of $765.99, the proceeds of the sale of forty two ounces of gold dust sent from California to the defendants by the plaintiff.

At the trial in the court of common pleas, before *Bishop, J.* the defendants admitted the minority of the plaintiff, and that they received the gold dust in pursuance of a contract between them and the plaintiff, by which the defendants furnished the plaintiff with an outfit to enable him to go to California, and the plaintiff, in consideration thereof, gave the defendants the following promise in writing: " South Lee, March, 1851. I hereby agree to give Judd Brothers a correct and honest one third of all the avails of my labor while in California or absent from this place. John Wells Breed."

The defendants introduced evidence tending to show that said contract was deliberately entered into ; that it was beneficial and reasonable, and sanctioned by the plaintiff's father; and that the sum received by the defendants was not more than one third of the avails of the plaintiff's labor in California during an absence of nine months. The defendants, the plaintiff objecting, also gave evidence of contracts made by them and by others with other young men going to California, for the purpose of proving that their contract with the plaintiff was fair and reasonable. The objection to this evidence was not pressed at the argument.

The plaintiff contended that although the defendants did receive the money by virtue of the alleged contract, yet he might avoid the contract, and recover -back in this action the money received, less the amount of the outfits and any money laid out and expended for the plaintiff in pursuance of such contract.

But the judge ruled that if the contract was benefic'al to the plaintiff, and obtained by no fraud or unfairness, and was for a good and reasonable consideration, and sanctioned by his father, and the money was received in virtue of the contract and in execution thereof, the plaintiff could not rescind the contract so executed, and recover the balance over the amount of the outfit and any other money expended by the defendants in pursuance of the contract. The verdict was for the defendants, and the plaintiff alleged exceptions to these instructions.

The arguments were had at September term 1853.

·*M. Wilcox*, for the plaintiff. The contract, not being for necessaries, might be avoided by the infant, either during his minority or on arriving at full age. *Tupper* v. *Cadwell*, 12 Met. 559. *Vent* v. *Osgood*, 19 Pick. 572, 573. *Moses* v. *Stevens*, 2 Pick. 335. *Medbury* v. *Watrous*, 7 Hill, 110. *Shipman* v. *Horton*, 17 Conn. 481. As the contract was not, at its inception, necessarily beneficial to the infant, evidence that it was in fact beneficial cannot affect his right to avoid it. Nor does the fact that the contract was executed affect the infant's right to rescind the contract, placing the other party *in statu quo ;* which he offered to do. *Badger* v. *Phinney*, 15 Mass. 363, 364. 19 Pick. 577. *Smith* v. *Evans*, 5 Humph. 70. Nor does the sanction of the father affect the legal privilege of the infant to avoid his contract. 19 Pick. 572. *Dedham* v. *Natick*, 16 Mass. 140. *Nightingale* v. *Withington*, 15 Mass. 274.

*J. E. Field*, for the defendants, cited *Stone* v. *Dennison*, 13 Pick. 1, 7 ; *McCoy* v. *Huffman*, 8 Cow. 84 ; and *Holmes* v. *Blogg*, 8 Taunt. 508.

THOMAS, J. There is no subject, perhaps, on which there has been more apparent conflict of opinion than upon the effect to be given to the contracts of infants. Especially is this so upon the questions what contracts are obligatory, what voidable, what absolutely void, and how far the execution of the contract and the enjoyment of its benefits by the infant affect his power to rescind and recover back the consideration paid, in cases where he is unable or does not offer to restore what he has received or its equivalent, or where from the nature of the case such restoration is impracticable.

This case however does not involve the discussion, in which *Holmes* v. *Blogg*, 8 Taunt. 508, and 1 Moore, 466, *Corpe v. Overton*, 10 Bing. 252, and 3 Moore & Scott, 738, *Mc Coy* v. *Huffman*, 8 Cow. 84, *Weeks* v. *Leighton*, 5 N. H. 343, *Harney* v. *Owen*, 4 Blackf. 337, and *Medbury* v. *Watrous*, 7 Hill, 110, are the leading cases, how far money paid by an infant, without having enjoyed the consideration, or upon an inadequate consideration, or by way of penalty, may be recovered back ; as the jury must have found, under the instructions of the court, that the consideration upon which the gold dust was remitted to the defendants was not only adequate, but beneficial to the plaintiff.

But what was the contract ? In substance and effect, it was that the defendants should furnish the outfit, and that the plaintiff should furnish his labor and time, and that of the fruits of the enterprise the plaintiff should have two thirds and the defendants one third. The amount of the outfit furnished does not appear, but it does appear that the contract was reasonable and beneficial to the infant. No time was prescribed for the plaintiff to be absent. He was in fact absent nine months. The contract was fully executed ; the defendants received their share of the fruits of the enterprise, the plaintiff retained his.

The case has been argued as if the gold dust were the result of the plaintiff's labor alone; whereas it was the result of the union of the labor of the plaintiff and the capital of the defendants.

The offer of the plaintiff to deduct, from the sum to be recovered, the amount paid for his outfit and expenses, would not place the parties *in statu quo*. The defendants took the risk of the life, health, and good fortune of the plaintiff. If the enterprise had wholly failed, they would have had no claim upon the plaintiff for remuneration, and the capital advanced would have been wholly lost. To make the defendants whole, they must be compensated for the risk assumed, and under all the circumstances of the case the sum advanced was deemed a reasonable consideration for a third part of the proceeds of the plaintiff's labor. The measure of compensation is to be deter-

mined, not by the result, but by the circumstances existing when the agreement was made.

It may be suggested that this construction of the agreement makes the contract of the parties one of partnership, and that by a contract of partnership an infant cannot be bound. So long as the contract remains executory, this is true. After the plaintiff had received the defendants' money for his outfit and voyage, he could not have been compelled to perform the contract and go to California. Upon his arrival there, he might have elected to rescind the contract. He might at his own pleasure have terminated the agreement. But he chose to do none of these, but to proceed and perform his agreement, and to pay over to the defendants their just proportion of the proceeds of the business. And we know of no ground, upon which, after arriving at full age, he can change the entire character of a contract so made and executed, treat the money so advanced by the defendants as a simple loan, and claim for himself all the fruits of an enterprise in which their money and his labor were the common stock, and this when the contract as originally made is found to have been fair, reasonable, and even beneficial to the plaintiff.

The ground upon which the plaintiff has put his case is, that the contract, not being for necessaries, was voidable, and that, though executed, he might rescind it, upon placing the defendants *in statu quo*, and that this he offered to do.

In the view of the case already stated, it is not necessary to determine whether the outfit furnished to the plaintiff would be included within the necessaries, for which a binding contract might be made by an infant. It is by no means however to be assumed that it would not. It would be difficult to lay down any general rule upon this subject, and to say what would or would not be necessaries. It is a flexible, and not an absolute term, having relation to the infant's condition in life, to the habits and pursuits of the place in which, and the people among whom he lives, and to the changes in those habits and pursuits occurring in the progress of society. Lord Ellenborough carried the doctrine so far as to hold that an infant might be charged

for regimentals sold him as a member of a voluntary corps, saying that in those perilous times (1804), when young men had enrolled themselves for the defence of the country, he should hold that clothes, so furnished, were necessaries. *Coates* v. *Wilson*, 5 Esp. R. 152. We suppose an infant, who had learned the trade of a carpenter, might be charged with a chest of tools necessary to do his labor as a journeyman; or a laborer with his pickaxe and spade. If the going to California to labor was, in view of the plaintiff's situation and condition in life, a reasonable and prudent step, it would be difficult to say that he might not be charged with the expenses of the outfit.

The plaintiff was desirous of engaging in this new field of labor. He had the assent of his father, to whom his services were due. To carry out this purpose, certain necessary expenses of outfit and voyage must be incurred. Not having means of his own, he enters into an arrangement with the defendants to furnish them, upon a special agreement, indeed, but reasonable and beneficial in its terms. Viewing the contract in this light, or as an agreement for the services of the plaintiff for a limited time, to be repaid by the advancement and by retaining also two thirds of the fruits of his labor, it would, if fairly made and fully executed, be within the principles, if not within the direct authority, of *Stone* v. *Dennison*, 13 Pick. 1.

In that case, the plaintiff, an infant over fourteen years of age, made an agreement with the defendant, his guardian assenting, by which he was to continue in the service of the defendant till he should arrive at the age of twenty one, for his board, lodging and education; and it was held, that the plaintiff not having been overreached in the contract, and the contract not being so unreasonable in itself as to raise a suspicion of fraud, and having been fully executed on both sides, the plaintiff could not notwithstanding such agreement maintain a *quantum meruit* for his services, by showing that in the event, as it happened, his services were worth more than the stipulated compensation. Indeed, to say that an infant could make no contract for his labor, however reasonable and beneficial to himself, by which he should be bound, even when fully executed on both sides, instead of

serving as a protection to the infant, would have the effect only to prevent his being employed. Men of business want to know beforehand what they have got to pay, and also to know that when an agreement for labor, reasonable and just, has been justly made and fully executed, and the price paid, there is an end of the matter.

If the contract set up by the defendants could, even after being fully executed, be rescinded, it seems to be conceded this could only be by putting the defendants *in statu quo.* If this includes, as seems to be obviously just it should, a fair compensation for the risk they necessarily incurred, the result would be only to come back to the starting point, the jury having found the agreement, under all the circumstances, a reasonable one.

In the case of *Moses* v. *Stevens,* 2 Pick. 335, cited by the counsel for the plaintiff, the contract had not been executed. The only question was, whether the doctrine of *Stark* v. *Parker,* 2 Pick. 267, should be extended to the contracts of infants. In *Stark* v. *Parker,* it had been settled that where one had contracted to labor for a fixed period, and for a price covering the whole period, the contract was entire, and the performance a condition precedent to the recovery. In *Moses* v. *Stevens,* it was held that this rule did not apply to the contracts of infants, but that an infant might rescind such contract and recover upon a *quantum meruit* for work done; yet the force of the contract was so far recognized as to allow the employer to deduct from fair wages whatever damage was sustained by the violation of his agreement.

In the later case also of *Vent* v. *Osgood,* 19 Pick. 572, the agreement had not been executed, nor was the contract shown to have been beneficial to the infant. Had the latter element been added, and the contract fully executed, the plaintiff having received his lay or share of the catchings, the case would have been like that now under consideration, and so we think would have been the decision, upon the principles stated in *Stone* v. *Dennison.* If the case of *Vent* v. *Osgood* were again to arise, the grounds upon which its decision is based might need reconsideration. *Exceptions overruled.*